Filed 12/28/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re L.B., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,     Plaintiff and Respondent, v. La.B.,     Defendant and Appellant. | A167363 (Alameda County Superior Ct. No. JD-034494-01) |

L.B.'s mother, La.B. (mother), appeals from a judgment entered after a contested hearing held pursuant to Welfare & Institutions Code[1] section 366.26 (terminating parental rights). In this appeal, she argues that the juvenile court committed reversible error in concluding that an adequate inquiry as to L.B.'s ancestry had been made under the Indian Child Welfare Act (ICWA)[2], even though no extended family members had been asked about his ancestry. We agree and therefore reverse the judgment conditionally, with instructions to complete the inquiry and then to proceed in a manner consistent with the completed inquiry's results.

---

[1] All subsequent statutory references are to the Welfare and Institutions Code, unless otherwise noted.

[2] Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA).

1

After police served a protective custody warrant pursuant to section 340 and Contra Costa Children & Family Services filed a petition under section 300, L.B. was placed with a resource family caregiver. Mother completed a form concerning parental notification of Indian status, on which she indicated that she might "be a member of, or eligible for membership in, a federally recognized tribe" of "unknown" name and location. At the initial hearing, the court inquired of both parents concerning possible ancestry, and both parents denied any. The Contra Costa County Superior Court exercised jurisdiction until L.B.'s legal residence was determined to be in Alameda County, where the case was then transferred.

In the first status review report filed by Alameda County Social Services Agency (SSA), it is noted that mother "report[ed] residing with her sister" for two months that year. The same document records a phone call between that sister and a social worker. An addendum report filed in anticipation of the section 366.26 hearing mentions not only the maternal aunt, but also a paternal grandmother, a maternal cousin, and two other maternal family members—"S[.] and T[.]" However, there is no record of any of these relatives being asked about L.B.'s ancestry.

At the conclusion of the section 366.26 hearing, the Alameda County Superior Court found "that the child is not an Indian child, and no further notice is required under ICWA based upon the following: [¶] . . . [O]n April 1st, 2021 Contra Costa . . . Court found that ICWA does not apply to this dependency matter. The reason is because the Court there inquired of both the mother and father who both indicated they did not have Native

American or American Indian ancestry."[3] Accordingly, the juvenile court terminated the respective parental rights of mother and presumed father.

This appeal followed.

## DISCUSSION

Mother argues that "the juvenile court erred when it failed to ensure adequate inquiry was completed pursuant to" ICWA. (Capitalization omitted.) We agree.

A trial court's determination that "an inquiry was 'adequate' and an agency acted with appropriate diligence" is reviewed for abuse of discretion. (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005.) The standard for assessing whether such an error was prejudicial is a matter of ongoing controversy now pending in our Supreme Court. (*In re Dezi C.* (2022) 79 Cal.App.5th 769, review granted September 21, 2022, S275578.) Like our colleagues in Division Two of this court, we "adopt the standard of" *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744 (*Benjamin M.*), which requires reversal " 'where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child.' "[4] (*In re V.C.* (2023) 95 Cal.App.5th 251, 262.)

---

[3] Because ICWA uses the term "Indian" and "Indian child" we do so on occasion as well, not out of disrespect, but because of the need for clarity and consistency, even though we recognize that other terms, such as Native American, Indigenous American, or American Indian may be preferable. (*In re A.A.* (2023) 88 Cal.App.5th 393, 396.)

[4] As explained by *In re V.C.*, at least two of the alternative standards are unsatisfactory: A "presumptive affirmance rule requiring a parent to demonstrate evidence in the record or make an offer on appeal regarding possible Indian heritage would routinize" the generally disfavored practice of

Another controversy exists over what the requisite ICWA inquiry entails. (*In re Delila D.* (2023) 93 Cal.App.5th 953 (*Delila D.*), review granted September 27, 2023, S281447.) Section 224.2, subdivision (b), provides: "If a child is placed into the temporary custody of a county welfare department pursuant to Section 306 . . . , the county welfare department or county probation department has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking . . . extended family members" (among others) "whether the child is, or may be, an Indian child . . . ." Appellate courts have disagreed as to whether that prescribed inquiry is required where, as here, the child has been taken into protective custody pursuant to a warrant, and not "pursuant to Section 306 . . . ." (*Ibid.*)

Answering in the negative and urging a narrow approach to the question are authorities such as *In re Robert F.* (2023) 90 Cal.App.5th 492, 504 (*Robert F.*), which purport to follow the "plain language of" the statute. (See also *In re Ja.O.* (2023) 91 Cal.App.5th 672, 681, and *In re Andres R.* (2023) 94 Cal.App.5th 828, 845 (*Andres R.*).) In *Andres R.,* Division Two of the Court of Appeal, Fourth Appellate District held that the duty imposed by section 224.2, subdivision (b), is expressly limited to warrantless removals, and that this construction neither conflicts with prior precedent nor undermines the purposes of ICWA. (*Andres R.*, at pp. 846, 845–855.)

considering "new evidence on appeal"; and a rule deeming a deficient inquiry harmless unless the record contains information suggesting a " ' "reason to believe" ' " otherwise " 'would effectively impose a duty on that parent to search for evidence that the Legislature has imposed on only the agency . . . .' " (*In re V.C.*, *supra*, 95 Cal.App.5th at p. 261, quoting *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 743.) Adopting the third alternative—the automatic reversal rule set forth by *In re G.H.* (2022) 84 Cal.App.5th 15, 32, inter alia—would not change the result in the present case.

In turn, responding to *Andres R.* and defending the rival construction originally championed by *Delila D., supra,* 93 Cal.App.5th 953, the Third Appellate District recently set forth the most comprehensive case for subdivision (b)'s broader application. (*In re C.L.* (2023) 96 Cal.App.5th 377.) According to that analysis, "section 224.2 was intended to expand the scope of initial inquiry beyond the parents," even when a child was removed pursuant to a protective custody warrant. (*Id.* at p. 388.)

We decline to adopt the narrow approach advanced by *Robert F.* and instead express our "agreement with *Delila D.* on this point, holding that the duty to make ICWA inquiry of 'extended family members' applies even if" the children are "not taken into 'temporary custody' pursuant to section 306." (*In re V.C., supra,* 95 Cal.App.5th at p. 260.)

In support of the conclusion in *Delila D., supra,* 93 Cal.App.5th at page 962 that "there is only one duty of initial inquiry, and that duty extends to available family members no matter how the child is initially removed from home," we note that section 224.2, subdivision (a) refers simply to "*an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child.*" (Italics added.) Moreover, subdivision (b) "does not state that the inquiry it describes applies 'only if' a child is taken into temporary custody under section 306." (*Delilah D.,* at p. 974.) And "most importantly, it simply doesn't make sense to apply different initial inquiries depending on how the child was initially removed from home, as that procedural happenstance has nothing to do with a child's ancestry." (*Id.* at p. 975.)

Our high court acknowledged that the Congressional enactment of ICWA in 1978 was in response to "abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-

5

Indian homes." (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) None of the cases using or following the narrower approach of *Robert F.* or *Andres R.* criticize the federal policy underlying ICWA, or the goal of ICWA to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families. (25 U.S.C. § 1902.) As the court recognized in *In re C.L.*, in enacting the federal policy that " 'where possible, an Indian child should remain in the Indian community[,]' " it is clear that "identification of a child's Indian community early on is paramount." (*In re C.L., supra*, 96 Cal.App.5th at p. 389, citing *Mississippi Choctaw Indian Band v. Holyfield* (1989) 490 U.S. 30, 37.) We agree with the observation in *Delila D.* that "[a]pplying a narrower initial inquiry to the subset of dependencies that begin with a temporary removal by warrant frustrates the purpose of the initial inquiry." (*Delila D., supra,* 93 Cal.App.5th at p. 962.) It makes no sense to require social workers to inquire of extended family members only in cases where the initial removal of the child was done without a warrant. Children removed from their homes through a protective custody warrant under section 340 are no less deserving of investigation into possible Native American heritage.

These policy considerations further inform our agreement with the analysis and conclusions of the courts in *Delila D.*, *In re V.C.,* and *In re C.L.* from earlier this year. We also second Justice Slough's concurring opinion in *Andres R.* in which she explains the reasons for her view that section 224.2, subdivision (b), and California Rules of Court, rule 5.481 "create a clear mandate: where a child has been removed from home or is at risk of being removed from home, the social worker must ask available extended family members whether the child is or may be an Indian child." (*Andres R., supra*, 94 Cal.App.5th at 861 (conc. opn. of Slough, J.).) An interpretation of section

224.2(b) that reduces the opportunities for identification of a child's Native American heritage plainly conflicts with that mandate. Finally, we agree with the court's observation in *Delilah D.* that "[t]he costs of broadening the inquiry [to include extended family members] are slight, as departments are already required to identify and to contact extended family members for various reasons unrelated to ICWA during dependency proceedings. (*Delilah D., supra,* 93 Cal.App.5th at p. 975, citing *In re S.S.* (2023) 90 Cal.App.5th 694, 702–703 [providing a list of examples].)

Here, notwithstanding the availability of and contact with multiple members of L.B.'s extended family, there seems to have been no attempt to ask those relatives about L.B.'s ancestry. For that reason, the inquiry was inadequate as a matter of law and the juvenile court's determination to the contrary was an abuse of discretion. Further, the error was prejudicial because the availability of those relatives indicates the existence of "readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) In short, the failure to complete the requisite inquiry was reversible error.

## DISPOSITION

The judgment is conditionally reversed. The juvenile court shall order the SSA to complete the initial ICWA inquiry, including the specific inquiries required under section 224.2, subdivision (b). If evidence of L.B.'s Native American heritage is uncovered, the court shall proceed in conformity with ICWA and related California law. If not, the juvenile court shall reinstate the judgment immediately.

HIRAMOTO, J.[*]

WE CONCUR:

BROWN, P.J.
GOLDMAN, J.

*Alameda County Social Services v. La.B.* (A167363)

---

[*] Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Judge:        Hon. Ursula Jones Dickson

Trial Court:        Alameda County Superior Court

Attorneys:

Sarah Vaona, under appointment by the Court of Appeal, for Defendant and Appellant.

Donna R. Ziegler, County Counsel, Samantha N. Stonework-Hand, Senior Deputy County Counsel, for Plaintiff and Respondent.